**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Bret J. Relyea,
*also known as* Bret Relyea,
Plaintiff,

v. 6:26-CV-02119 (MAD/MJK)

Robert Newton, Sr.

Defendant.

---

Bret Relyea, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

**ORDER and REPORT-RECOMMENDATION**

Relyea commenced this action on October 15, 2026, by filing a Complaint. (Dkt. 1). Relyea also filed an application to proceed *in forma pauperis* ("*IFP* Application"). (Dkt. 2). The Clerk has sent the Complaint and *IFP* Application (Dkts. 1, 2) to the Court for review.

## I. *IFP* APPLICATION

Relyea declares in his *IFP* application that he is unable to pay the filing fee. (Dkt. 2). After reviewing Relyea's *IFP* application, this Court finds that he is eligible for *IFP* status.

## II. BACKGROUND

The Court assumes familiarity with the facts of this case which the Court will incorporate in its analysis where necessary.

## III. STANDARD OF REVIEW

Courts must consider the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Section 1915(e)(2) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *IFP*, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28

U.S.C. § 1915A(a)-(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c).

Second Circuit jurisprudence suggests that 28 U.S.C. § 1915(e)(2)(B)'s review of *pro se* complaints is a two-step inquiry.

At step one, courts apply the traditional special solicitude afforded to *pro se* plaintiffs. *See, e.g.*, *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023). Indeed, courts are "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings" and "motion papers." *Id.* (cleaned up). So, at step one, courts must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *2 (2d Cir. 2024) (summary order) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140-41 (2d Cir. 2019)). And once the court has done so, it must then construe the *pro se* submission "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (cleaned up).

At step two, courts subject the liberally construed pleading to Rule 8's pleading standard. *See, e.g.*, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2005) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when affirming a district court's dismissal of the plaintiff's complaint under 28 U.S.C. § 1915); *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (summary order) (citing *Sykes* and affirming the District Court's *sua sponte* dismissal of a prisoner rights case); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (summary order) (same in a civil rights case); *Sheehy v. Brown*, 335 F. App'x 102, 103-04 (2d Cir. 2009) (summary order) (citing *Iqbal* and affirming the District Court's dismissal of a claim under 20 U.S.C. § 1915(e)(2)).

While the Second Circuit has never formally stated that Rule 8's pleading standard applies, the Court infers that the Second Circuit has adopted that position. To arrive at this conclusion, the Court focuses on two pieces of evidence. First, the Circuit has cited *Iqbal* and *Twombly*—which clarified Rule 8s pleading standard. *See Sykes*, 723 F.3d at 403. Second, the other circuit courts have authorized district courts to apply the Rule 12(b)(6) standard when reviewing claims under § 1915(e)(2)(B).

*See Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (applying Rule 12(b)(6)'s standard to § 1915(e)(2)(B) review); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (same); *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (*per curiam*) (same); *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (same); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 468 (7th Cir. 2017) (same); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same); *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007) (same); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (same). Nothing in the Second Circuit's jurisprudence leads this Court to believe that it would break stride with eight other circuit courts. This evidence, altogether, leads this Court to believe that the Second Circuit approves of this Court's application of Rule 12(b)(6)'s standard to § 1915(e)(2)(B) reviews *after* applying special solicitude to the *pro se* submission.

When applying Rule 8 to pleadings, the Court must determine if a claim is facially plausible. *See Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This means that *pro se* complaints, even while liberally construed, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Sykes*, 723 F.3d at 403 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In sum, the Court's role, when reviewing a Complaint under § 1915(e)(2)(B), is two-fold. First, the Court must draw all inferences in the *pro se* plaintiff's favor and construe their submission to raise the strongest possible argument. Second, the Court must then review the Complaint and determine if it plausibly alleges enough facts for the Court to reasonably infer that the defendant would be liable for the alleged misconduct.

## IV. <u>DISCUSSION</u>

The Court recommends dismissal of Relyea's Complaint *without prejudice and without leave to amend* for lack of subject matter jurisdiction. First, the Court lacks federal question jurisdiction under

28 U.S.C. § 1331 because the Complaint does not allege a claim arising under federal law. Second, diversity jurisdiction under 28 U.S.C. § 1332(a)(1) is lacking because Relyea does not plead damages that exceed $75,000 and he does not and evidently cannot plead that he and the defendant are citizens of different States.

### A. Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (cleaned up). In fact, "a district court has an obligation to examine its subject matter jurisdiction sua sponte." *Miller v. Syracuse University*, No. 21-CV-1073 (LEK/TWD), 2022 WL 7505177, at *2 (N.D.N.Y. Oct. 13, 2022).

Federal question jurisdiction is conferred when a "civil action[] aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A claim arises under federal law if the complaint 'establishes either that federal law creates the cause of action or that

the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Jia v. Weee! Inc.*, No. 24-CV-534, 2025 WL 486940, at *2 (S.D.N.Y. Feb. 13, 2025) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690, (2006)).

Diversity jurisdiction is conferred under 28 U.S.C. § 1332(a)(1) for "civil actions where the matter in controversy exceeds the sum or value of $75,000, and is between," among other things, "citizens of different States[.]" 28 U.S.C. 1332(a).

### B. The District Court should dismiss the Complaint for lack of subject matter jurisdiction.

*i. Relyea fails to establish federal question jurisdiction.*

Federal question jurisdiction allows federal courts to hear cases brought under federal law or involving a federal issue. "The district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case can 'arise under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (cleaned up). First, "an action arises under federal law if a federal statute 'creates the cause of action asserted.'" *Trustees of New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, 102 F.4th 572, 594 (2d Cir. 2024) (quoting *Gunn*, 568

U.S. at 257). *Id.* Second, "on rare occasions," federal courts may also exercise jurisdiction over "suits containing state-law claims alone[.]" *Royal Canin U. S. A., Inc v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting *Gunn*, 568 U.S. at 258). Federal courts can exercise jurisdiction over cases containing only state-law claims when "a federal issue is[] (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Here, Relyea fails to establish federal question jurisdiction. There are no allegations in the Complaint from which to discern that jurisdiction arises under a federal statute or involves a federal issue. Relyea's allegations refer to a personal injury that he alleges to have sustained on defendant's real property. Accordingly, federal question jurisdiction is lacking.

*ii. Relyea fails to establish diversity jurisdiction.*

Federal courts have diversity jurisdiction over claims seeking only injunctive relief when the plaintiff values the relief sought at over $75,000. District Courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . .

and is between," among other things, "citizens of different States[.]" 28 U.S.C. § 1332(a). "In actions seeking declaratory or injunctive relief, . . . the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). This value "is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006) (quoting *Kheel v. Port of New York Auth.*, 457 F.2d 4d, 49 (2d Cir. 1972)).

A plaintiff must justify diversity jurisdiction by alleging an amount in controversy over $75,000 in their complaint. A party "must allege in [their] pleading the facts essential to show jurisdiction." *McNutt v. General Motors Corp. of Indiana*, 298 U.S. 178, 189 (1936). This applies to parties "asserting diversity jurisdiction in federal court," who have "the burden of establishing the existence of the jurisdictional amount in controversy." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994). So, "if the jurisdictional amount is not clearly alleged

in the plaintiff's complaint, . . . federal courts lack diversity jurisdiction." *Id.* at 273-74.

The Court recommends dismissal of the Complaint because Relyea neither alleges an amount in controversy over $75,000 nor can one be discerned from the face of the Complaint. Further, there are no allegations in the Complaint that Relyea and Defendant are citizens of different States. Because Relyea cannot establish the necessary elements for purposes of diversity jurisdiction, the Court recommends dismissal of the Complaint *without prejudice and without leave to amend*.

## V. OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends that Relyea not be afforded an opportunity to file an amended pleading because there are no allegations that can be asserted that would alter the fact that the Court lacks subject matter jurisdiction over his purported claims.

## III. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that Relyea's motion to proceed *in forma pauperis* is **GRANTED**, and it is hereby further **RECOMMENDED**, that Relyea's Complaint (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** for lack of subject matter jurisdiction, and it is further

**ORDERED** that the Clerk provide Relyea with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the Relyea has fourteen (14) days within which to file written objections to the foregoing report.[1] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 27, 2026.

Digitally signed by Mitchell J Katz
Date: 2026.10.27 10:41:45 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

[1] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 1266245
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Paul WHITE, Plaintiff-Appellant,
v.
Sandra SCHMIDT, aka Sandra Kroger Schmidt, aka Sandra K. Schmidt, Defendant-Appellee,
Pat Doe, (1–10), Defendants.
Paul White, Plaintiff-Appellant,
v.
Teodocia Santos, Ella Abney, Personally and as Executrix of the Estate of Albert Abney, Pat Doe, Defendants-Appellees.*

* The Clerk of Court is directed to consolidate these appeals for purposes of decision.

22-1267, 22-1911
|
March 26, 2024

Appeals from judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul White, pro se, Coxsackie, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: ROBERT D. SACK, WILLIAM J. NARDINI, MYRNA PÉREZ, Circuit Judges.

**SUMMARY ORDER**

***1**

* * *

Plaintiff-Appellant Paul White, *pro se* and incarcerated, appeals from the April 26, 2022, and August 1, 2022, *sua sponte* dismissals of two federal lawsuits (Mae A. D'Agostino, *District Judge*), each pursuant to the *Rooker-Feldman* doctrine. White's appeals have been considered in tandem and consolidated for disposition. In 2015, White was convicted in New York state court of grand larceny and fraud, stemming from a scheme to defraud investors in a North Carolina real estate development. *See Spota v. White*, No. 29681-12, 2016 WL 6427362, at *2, 4 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 28, 2016) (explaining the background of the criminal case in a decision on a civil forfeiture proceeding). The Supreme Court, Suffolk County, awarded $2.975 million in restitution to his victims, who included Sandra Schmidt, Teodocia Santos, and Ella and Albert Abney (the “Abneys”). *Id.* at *2. White's appeal of the criminal judgment is, as of the time of writing, still pending.

In 2014, the Suffolk County District Attorney's Office brought a civil forfeiture action against White and obtained a $2.4 million judgment. *Id.* at *4, 9. After the judgment was entered, White retained an attorney who obtained a decision in a North Carolina court, which he claims held that the investors had received their bargained-for-benefit, consisting of the validly deeded ownership of the property.

In 2017, White sued Schmidt and the Abneys in the Eastern District of New York, claiming that they had provided false statements to the Suffolk County District Attorney's Office and had testified falsely at grand jury proceedings and at his criminal trial, which resulted in their unjust enrichment by virtue of the restitution judgment that had been entered in their favor. In two different orders, the Eastern District dismissed the action, reasoning that the defendants were entitled to witness immunity, and in the alternative, the court lacked subject matter jurisdiction to entertain the unjust enrichment claim under *Rooker-Feldman*. *See generally White v. Abney*, No. 17-cv-4286, 2020 WL 5848647 (E.D.N.Y. Sept. 30, 2020); *White v. Abney*, No. 17-cv-4286, 2021 WL 1176218 (E.D.N.Y. Mar. 29, 2021).

In 2021, White filed the actions underlying these appeals. He sued Schmidt in the Northern District of New York, claiming that the restitution judgment had been satisfied by the North Carolina decision and that she had been unjustly enriched by a sum that he had separately paid to her. In a separate action, he sued Santos and the Abneys, raising substantially identical claims.

In 2022, the district court *sua sponte* dismissed each action as barred under the *Rooker-Feldman* doctrine and,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

alternatively, by collateral estoppel or *res judicata*, based on the preclusive effect of the Eastern District's earlier *Rooker-Feldman* procedural holding. *See generally White v. Schmidt*, No. 21-cv-854, 2022 WL 1222805 (N.D.N.Y. Apr. 26, 2022); *White v. Santos*, No. 21-cv-417, 2022 WL 3025723 (N.D.N.Y. Aug. 1, 2022). White timely appealed. We assume the parties' familiarity with the case.

***2** We review *de novo* a *sua sponte* dismissal of a complaint, including a dismissal based on collateral estoppel, *res judicata*, or lack of subject matter jurisdiction under *Rooker-Feldman*. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*sua sponte* dismissal); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997) (collateral estoppel and *res judicata*); *Edwards v. McMillen Cap., LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (*Rooker-Feldman*). When reviewing a *sua sponte* dismissal, we "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019).[1]

1 Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

Recognizing the "special solicitude" this Court must afford *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), we nevertheless conclude that White's claims against Schmidt and the Abneys are barred by *res judicata*, or claim preclusion. "[C]laim preclusion ... operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). *White v. Abney* involved claims by White against Schmidt and the Abneys, so claim preclusion bars him from now raising any claims "relating to the same transaction ... that could have been brought" at the time he filed suit in *White v. Abney*. *Id.* White alleges that the following had occurred before he filed his complaint in *White v. Abney*: (1) the Suffolk County Court entered restitution judgments in favor of Santos, the Abneys, and Schmidt against White, (2) White obtained a decision from the North Carolina Superior Court determining that the defendants in these cases held valid deeds for the properties at issue, and (3) White paid approximately $31,000 each to Schmidt and the Abneys in partial satisfaction of the restitution judgments.

In the present cases, White seeks a declaratory judgment that the Suffolk County Court restitution judgments against him were satisfied by the North Carolina decision, and a return of the money he has paid to the defendants based on a theory of unjust enrichment distinct from the theory of unjust enrichment White relied on in *White v. Abney*. However, because White allegedly paid the defendants a partial restitution before the North Carolina decision was issued, and the North Carolina decision was issued before White initiated *White v. Abney*, White could have included his current claims for declaratory relief and unjust enrichment against Schmidt and the Abneys in *White v. Abney*. Accordingly, White's claims against Schmidt and the Abneys are barred by *res judicata*.

Santos, however, was not included as a defendant in *White v. Abney*, so claim preclusion cannot apply to White's current claims against Santos. *See N. Assurance*, 201 F.3d at 87. We therefore consider whether White's claims against Santos are barred under the *Rooker-Feldman* doctrine or collateral estoppel, as the district court found. We determine that they are not. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). For a federal court to abstain under *Rooker-Feldman*,

> ***3** (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021). Here, the relevant state-court judgment is the criminal restitution judgment, which White alleges has been satisfied, not the civil forfeiture judgment. The civil forfeiture court did not address White's challenge to the restitution order, explaining instead that White's challenge was an improper collateral attack on the criminal conviction, which had to be raised instead on direct criminal appeal. *See Spota*, 2016 WL 6427362, at *4. Thus, if White is


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

complaining of an injury from a state-court judgment, the relevant judgment is the criminal restitution judgment.

The application of *Rooker-Feldman* here was improper because the criminal restitution judgment was not final at the time the federal lawsuit commenced. In *Hunter v. McMahon*, 75 F.4th 62, 65, 67, 70–71 (2d Cir. 2023), this Court concluded that the *Rooker-Feldman* doctrine could not apply when an appeal remains pending in state court at the time a complaint is filed, because *Rooker-Feldman* applies only after state-court proceedings have "ended." Because White's criminal appeal remains pending, the relevant state court proceeding had not concluded before White filed his complaint. Accordingly, the district court erred by dismissing the complaint based on *Rooker-Feldman*.

Although the district court alternatively dismissed the complaint on the basis of collateral estoppel, we do not affirm on this ground. In *White v. Abney*, the Eastern District dismissed White's complaint against Schmidt under the *Rooker-Feldman* doctrine. *Abney*, 2020 WL 5848647, at *7. While collateral estoppel can bar reconsideration even of erroneous prior rulings, our decision in *Hunter* amounted to a significant clarification of our law on this fairly significant issue of *Rooker-Feldman*'s proper scope. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("[E]ven where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect."). Accordingly, we do not affirm the judgment based on the preclusive effect that the *Rooker-Feldman* holding in *White v. Abney* might have.

* * *

In sum, the district court erred by relying on the *Rooker-Feldman* doctrine to *sua sponte* dismiss White's complaints. We decline to affirm on the alternative grounds of collateral estoppel. However, the district court's judgments with respect to Schmidt and the Abneys can be affirmed on the alternative ground of *res judicata*. We express no view on the merits (or lack thereof) of the underlying suit against Santos, which is better addressed by the district court in the first instance.[2] Therefore, the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED** for further proceedings.

2 We acknowledge that the district court may decide that a stay is warranted pending the outcome of the criminal restitution judgment appeal. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay ... the federal action in favor of the state-court litigation.").

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 1266245

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (10)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants.<br>2022 WL 10084079 | PDF | C.A.2 | Sep. 28, 2022 | Brief |
| **2. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants.<br>2022 WL 1468427 | PDF | C.A.2 | Apr. 18, 2022 | Brief |
| **3. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant.<br>2022 WL 1468431 | PDF | C.A.2 | Mar. 18, 2022 | Brief |
| **4. Appellant's Brief**<br>Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant.<br>2022 WL 1468434 | PDF | C.A.2 | Mar. 18, 2022 | Brief |
| **5. Docket 22-1911**<br>White v. Santos | — | C.A.2 | Sep. 01, 2022 | Docket |
| **6. Docket 22-1267**<br>White v. Schmidt | — | C.A.2 | June 06, 2022 | Docket |
| **7. Docket 22-89**<br>White v. Santos | — | C.A.2 | Jan. 14, 2022 | Docket |
| **8. Docket 22-92**<br>White v. Schmidt | — | C.A.2 | Jan. 14, 2022 | Docket |
| **9. Docket 1:21-CV-00854**<br>White v. Schmidt et al | — | N.D.N.Y. | July 29, 2021 | Docket |
| **10. Docket 1:21-CV-00417**<br>White v. Santos et al | — | N.D.N.Y. | Apr. 13, 2021 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (12)**

**Direct History (12)**

1. White v. Schmidt
2021 WL 3856741 , N.D.N.Y. , Aug. 30, 2021

*Appeal Dismissed by*

2. White v. Schmidt
2022 WL 17406134 , 2nd Cir. , Apr. 21, 2022

*AND Report and Recommendation Adopted by*

3. White v. Schmidt
2022 WL 1222805 , N.D.N.Y. , Apr. 26, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

4. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

5. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

6. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )

7. White v. Santos
2021 WL 6339606 , N.D.N.Y. , Oct. 18, 2021

*Appeal Dismissed by*

8. White v. Santos
2022 WL 18282866 , 2nd Cir. , Apr. 21, 2022

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

*AND Report and Recommendation Adopted by*

9. White v. Santos
2022 WL 3025723 , N.D.N.Y. , Aug. 01, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

10. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

11. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

12. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )

2022 WL 7505177
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Trevor MILLER, individually and on behalf of all others similarly situated, Plaintiff,
v.
SYRACUSE UNIVERSITY, Defendant.

5:21-CV-1073 (LEK/TWD)
|
Signed October 13, 2022

**Attorneys and Law Firms**

Todd S. Garber, Andrew C. White, Finkelstein, Blankinship, Frei-Pearson & Garber LLP, White Plains, NY, Seth A. Meyer, Keller Postman LLC, Chicago, IL, for Plaintiff.

Casie D. Collignon, Sarah A. Ballard, Baker & Hostetler LLP, Denver, CO, Eric R. Fish, Baker & Hostetler LLP, New York, NY, for Defendant.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

***1** Plaintiff Trevor Miller, on behalf of himself and others similarly situated, commenced this class action against Defendant Syracuse University, on September 2, 2021, in the New York Supreme Court, County of Onondaga. Dkt. No. 2 ("Complaint"). On September 9, 2021, Plaintiff served Defendant with copies of the Summons and Complaint via process server. See Dkt. No. 1 ("Notice of Removal") ¶ 4. On September 29, 2021, Defendant removed this action to federal court, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). Id. ¶ 1. To date, Plaintiff has not moved the Court to remand this action back to state court, and has not contested federal jurisdiction under the CAFA. See generally Dkt. No. 16 ("Stipulation and Order to Extend Defendant's Responsive Pleading Deadline"); Dkt. No. 25 ("Plaintiff's Response to Defendant's Motion to Dismiss").

Now before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 22 ("Notice of Motion"). For the reasons that follow, the Court reserves judgment on the Motion until further notice, and orders Defendant to file a memorandum of law, not to exceed fifteen pages, addressing whether Plaintiff has standing for each claim he seeks to press in federal court, no later than October 27, 2022. In the same memorandum, Defendant should address whether dismissal or partial remand is warranted if this Court ultimately finds that Plaintiff has standing to pursue some of his claims, but not others, in federal court. If Defendant does not wish to take a definitive position on Plaintiff's standing in this memorandum, then Defendant should brief the Court on whether this burden failure, alone, warrants remand under 28 U.S.C. § 1447(c). Plaintiff may file a response, not to exceed fifteen pages, within fourteen days of Defendant's filing of the memorandum. Defendant may file a reply, not to exceed seven pages, within seven days of Plaintiff's response.

## II. BACKGROUND

In the Complaint, Plaintiff brings several state-law claims "against Defendant ... as a result of Defendant's failure to safeguard and protect the confidential information of [Plaintiff] and the other members of the Class." Compl. ¶ 1. "The Class is defined as: All persons whose Sensitive Information, provided to Defendant as part of their application to or enrollment at Syracuse University, was exposed to unauthorized access by way of the data breach of Defendant's computer system on or about September 24, 2020." Id. ¶ 43. [1]

1 In his Complaint, Plaintiff defines "Sensitive Information" as "the confidential information of Plaintiff and the other members of the Class—including Social Security Numbers and personal information that can be used to perpetrate identity theft—in Defendant's custody, control, and care." Compl. ¶ 1.

On February 3, 2022, Defendant moved this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6). See Notice Mot. In its opening memorandum of law in support of the Motion, Defendant claims it "is not challenging Plaintiff's Article III standing; it is challenging whether Plaintiff has sufficiently alleged cognizable injury as an element of his causes of action." Dkt. No. 22-1 ("Defendant's Memorandum of Law in Support of the Motion") at 7. But in its Reply, Defendant appears to suggest that Plaintiff's claims should be dismissed for lack of standing. See Dkt. No. 26 ("Defendant's Reply") at 2–3. For instance, Defendant relies extensively on Storm


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

v. Paytime, Inc., 90 F. Supp. 3d 359, 367–68 (M.D. Pa. 2015). In that case, various plaintiffs brought suit against their employers' payroll provider and sought "to recover damages allegedly sustained after [the] provider was subjected to a cyber-attack in which [their] confidential information was allegedly accessed by a third-party." Id. at 359. The district court in Storm found that the plaintiffs lacked Article III standing and dismissed their suit. Id. at 367–69. After excerpting more than 250 words from the court's opinion in Storm that explained why plaintiffs' claims in that case must be dismissed for lack of standing, Defendant asserts: "This Court should reach the same conclusion and similarly dismiss Plaintiff's claims here." Def.'s Reply at 3. In its Reply, Defendant also points to Cooper v. Bonobos, Inc., No. 21-CV-854, 2022 WL 170622 (S.D.N.Y. Jan. 18, 2022), for the assertion that "courts have consistently 'rejected allegations that diminution in the value of personal information can support [even] standing,' " and likening such allegations to Plaintiff's allegations in the Complaint. Def.'s Reply at 4 (quoting Cooper, 2022 WL 170622, at *5) (alteration in original).

***2** On August 18, 2022, Defendant also filed a Notice of Supplemental Authority "to inform the Court of a recent decision by the U.S. District Court for the Southern District of New York, Aponte v. Northeast Radiology, P.C., No. 21-CV-5883, 2022 WL 1556043 (S.D.N.Y. May 16, 2022)." Dkt. No. 27 ("Notice of Supplemental Authority") at 1. Defendant asserts that the court in Aponte "dismissed the action in its entirety" " 'because plaintiffs d[id] not allege that they ha[d] suffered, or w[ould] imminently suffer, an injury-in-fact[.]' " Id. at 2 (quoting Aponte, 2022 WL 1556043, at *5). Defendant acknowledges "the Aponte court dismissed on 12(b)(1) [lack of standing] grounds only and did not reach dismissal under 12(b)(6)." Notice Suppl. Authority at 1 n.1. In conclusion, Defendant argues that "[b]ecause Plaintiff ... makes substantially similar arguments and [Defendant] has stated substantially similar defenses in this case as plaintiffs and defendants in Aponte," this Court should "consider [Aponte as] supplemental authority in further support of [Defendant's] Motion to Dismiss." Id. at 3.

## III. LEGAL STANDARD

"Article III, Section 2 of the [United States] Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.' " SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020) (citing Dhinsa v. Krueger, 917 F.3d 70, 77 (2d Cir. 2019)). "The standing doctrine, which emerges from Article III, is designed 'to ensure that federal courts do not exceed their authority as it has been traditionally understood.' " SM Kids, 963 F.3d at 211 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). The doctrine imposes three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S at 338.

Given that standing is an essential element of federal subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992) (standing "is an essential and unchanging part of the case-or-controversy requirement of Article III"), it follows that if "a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case." In re U.S. Catholic Conf., 885 F.2d 1020, 1023 (2d Cir. 1989). And since a district court must remand a removed action to state court whenever "it appears that the district court lacks subject matter jurisdiction," 28 U.S.C. § 1447(c), it similarly follows that a district court must remand a removed action to state court whenever it finds a plaintiff lacks standing to bring suit. This is true even when neither party contests Article III standing, since a district court has an obligation to examine its subject matter jurisdiction sua sponte. See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) ("The failure of the parties to contest [a] district court's authority to hear a case 'does not act to confer [federal] jurisdiction ... since a challenge to subject matter jurisdiction cannot be waived....' " (quoting Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 605 (2d Cir. 1988))). However, the Second Circuit has yet to directly address whether dismissal or partial remand is warranted if a court finds that a plaintiff has standing to pursue some of her claims in federal court, but not others. See Zanotti v. Invention Submission Corp., No. 18-CV-5893, 2020 WL 2857304, at *12 (S.D.N.Y. June 2, 2020) (comparing different approaches "to how a court should dispose of ... standing-deficient claims" when it "finds that it lacks subject matter jurisdiction over only some, but not all, claims in a case removed from state court").

"A party seeking removal bears the burden of showing that federal jurisdiction is proper." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011). After a defendant removes an action to federal court, if that same defendant subsequently "insist[s] that the [c]ourt *lacks* jurisdiction" because the plaintiff lacks Article III standing, "and [the] [p]laintiff concurs[,]" the court may sua sponte remand the action back to state court pursuant to 28 U.S.C. § 1447(c), "because no party [has] shoulder[ed]

the burden of proving jurisdiction[.]" Black v. Main St. Acquisition Corp., No. 11-CV-0577, 2013 WL 1295854, at *1 (N.D.N.Y. Mar. 27, 2013) (Kahn, J.) (remanding case after removing defendant filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction). [2] However, there is little guidance from the Second Circuit on how to address a removing defendant who merely casts doubt on a court's jurisdiction without expressly challenging it through a Rule 12(b)(1) motion to dismiss.

2 Some have described this phenomenon as "fraudulent removal," because filing a Rule 12(b)(1) motion after removal reveals that the defendants "kn[e]w or should [have] know[n] that a federal court would lack subject matter jurisdiction" when they originally removed the case. Zachary D. Clopton & Alexandra D. Lahav, Fraudulent Removal, 135 Harvard L. Rev. F. 87, 92 (2021). District courts routinely remand actions back to state court after a removing defendant moves to dismiss a plaintiff's complaint for lack of Article III standing under Rule 12(b)(1). See, e.g., Katz v. Six Flags Great Adventure, LLC, No. 18-116, 2018 WL 3831337, at *8–9 (D.N.J. Aug. 13, 2018) (remanding case after removing defendant filed motion to dismiss for lack of standing and court agreed that plaintiff lacked Article III standing); May v. Consumer Adjustment Co., No. 14-CV-166, 2017 WL 227964, at *4 (E.D. Mo. Jan. 19, 2017) (same).

## IV. DISCUSSION

***3** Here, Defendant cannot confer subject matter jurisdiction on this Court simply by refusing to challenge Plaintiff's standing. See CenterMark, 30 F.3d at 301 ("failure ... to contest ... subject matter jurisdiction" does "not act to confer jurisdiction"); see also Def.'s Mem. at 7 (Defendant claiming it "is not challenging Plaintiff's Article III standing"). Nor has Defendant remained faithful to its initial claim of "not challenging" Plaintiff's standing. See Def.'s Reply at 2–4; Notice Suppl. Authority. While Defendant has avoided the trap of "fraudulent removal" by declining to challenge Plaintiff's standing directly with a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, see generally supra note 2, Defendant has certainly cast doubt on Plaintiff's standing in its papers. There is a dearth of guidance within the Second Circuit on how to address a removing defendant who casts doubt on a court's jurisdiction without explicitly challenging it, so the Court must look beyond the Circuit for guidance.

Barnes v. ARYZTA, LLC, 288 F. Supp. 3d 834 (N.D. Ill. 2017), is instructive. In that case, an employee brought a class action against his employer in state court. Similar to Defendant here, the defendant-employer in Barnes removed the case to federal court "based on jurisdiction accorded by the CAFA." Id. at 836. But unlike Defendant here, the defendant-employer in Barnes expressly "moved to dismiss the complaint for lack of subject matter jurisdiction based on the argument that [the] [plaintiff-employee] lacked a concrete injury-in-fact sufficient to confer Article III standing [under] Spokeo." Id. Upon realizing its Rule 12(b)(1) motion could result in remand instead of dismissal, the defendant-employer then withdrew the motion, and subsequently argued against remand because the plaintiff-employee's "Article III standing issue ha[d] not been agreed upon and remain[ed] undecided." Id. at 838 (quoting the defendant-employer's response to the plaintiff-employee's motion to remand).

The court in Barnes found this argument unconvincing, precisely because the defendant-employer's " 'wait and see' approach [to determining jurisdiction under Article III] negate[d] the basis on which it filed its removal petition" in the first place—that is, its initial position that the federal court had original jurisdiction over the action. Id. Therefore, "[t]he [c]ourt decline[d] to decide whether there [was] Article III standing" and remanded the action to state court because the defendant-employer did "not even attempt ... to persuade the [c]ourt that federal jurisdiction exists." Id. at 839–40. According to the court in Barnes, "[a]ny doubt regarding jurisdiction should be resolved in favor of the states[,]" and, thus, the doubt that the defendant-employer cast on the plaintiff-employee's Article III standing by filing and then withdrawing its motion supported remand to the state court. Id. at 839 (quoting Mocek v. Allsaints USA Ltd., 220 F.Supp.3d 910, 912–13 (N.D. Ill. 2016)). [3]

3 The court also granted the plaintiff-employee's request for costs and attorney's fees associated with the additional litigation resulting from the removal, implying that the defendant-employer lacked an objectively reasonable basis for seeking removal in the first place. Barnes, 288 F. Supp. 3d at 840 (citing Mocek, 220 F. Supp. 3d at 914 (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

where the removing party lacked an objectively reasonable basis for seeking removal.”))). In doing so, the Barnes court emphasized that “[i]t was incumbent on [the defendant-employer] ... to consider the Article III standing issue when it removed the action,” 288 F. Supp. 3d at 840 n.3, and appeared to suggest that the defendant-employer had unnecessarily prolonged the proceedings, id. at 840 (citing Mocek, 220 F. Supp. 3d at 914 (criticizing removing defendant for “unnecessarily prolong[ing] the proceedings”)).

***4** A few months later, a similar situation arose in Zhirovetskiy v. Zayo Group, LLC, No. 17-CV-5876, 2018 WL 11195494 (N.D. Ill. Mar. 7, 2018). However, unlike in Barnes, the removing defendant in Zhirovetskiy never filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but only moved for dismissal for failure to state a claim under 12(b)(6)—as Defendant has done here. The removing defendant in Zhirovetskiy asserted in its papers arguing in favor of dismissal for failure to state a claim that the “[p]laintiff failed to allege an injury in fact to satisfy [an] element of [his] claim.” 2018 WL 11195494, at *2. In response, the plaintiff in Zhirovetskiy filed a motion to remand because the removing defendant had “undermine[d] standing” in its papers. Id. The Zhirovetskiy court “agree[d] ... that ... [d]efendant's argument about [the] [p]laintiff failing to allege a cognizable harm [as a part of its Rule 12(b)(6) motion] ultimately undermine[d] the position that there is an injury-in-fact that justifie[d] the removal in the first place.” Id. Relying on Barnes, the court remanded the case to state court without analyzing the merits of standing. [4]

4 Like the court in Barnes, the Zhirovetskiy court granted the plaintiff's request for costs and attorney's fees incurred by the removal, implying that the defendant lacked an objectively reasonable basis for seeking removal in the first place. 2018 WL 11195494, at *2 (citing Mocek, 220 F. Supp. 3d at 914).

Two months later, the court in Dixon v. Washington & Jane Smith Cmty.-Beverly, No. 17-CV-8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018), declined to adopt Zhirovetskiy's burden-failure approach in response to a similar set of facts, and proceeded to address the merits of the standing issue. Id. at *8. In departing from Zhirovetskiy's approach, the court appeared to rely in part on the language of 28 U.S.C. § 1447(c), which requires remand “[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.” 28 U.S.C. § 1447(c). The court reasoned that while this language requires a district court to remand a case once it determines that subject matter jurisdiction is in fact lacking, it does not appear to require remand “simply because the [removing] defendant ... failed to meet [its] burden with respect to establishing Article III standing.” Dixon, 2018 WL 2445292, at *7. The Dixon court also justified its departure from Zhirovetskiy because “there is no presumption against removal in cases that are removed under CAFA.” Dixon, 2018 WL 2445292, at *7 (citing Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014) (“[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.”)). Accordingly, the Dixon court proceeded to address the merits of the standing issue, despite the removing defendant's burden failure, and ultimately found that the plaintiff had Article III standing. 2018 WL 2445292, at *10.

Unlike any of the three cases mentioned above, Plaintiff here has not yet urged this Court to remand the action in response to Defendant's papers. In Barnes, Zhirovetskiy, and Dixon, because the plaintiffs expressly asked for remand after the removing defendants cast doubt on Article III standing, all parties had an additional opportunity to address standing directly before the courts issued opinions on that question, even if the defendants in those cases ultimately refused to take the opportunity to affirmatively support standing. But here, because Plaintiff has *not* asked for remand in response to Defendant casting doubt on this Court's jurisdiction, neither party has briefed this Court on whether Plaintiff has standing to pursue his claims in federal court. They have simply conceded standing, but that it not enough to establish it.

While the Court could forge ahead and sua sponte resolve the issue of standing before reaching the merits of the pending Motion to Dismiss, without further briefing from the parties, the Court finds that approach unwise. See In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 892 F.3d 108, 111 (2d Cir. 2018) (finding that an issue was ripe for decision only after supplemental briefing); Robinson v. Wentzell, No. 18-CV-0274, 2019 WL 1207858, at *3 (D. Conn. Mar. 14, 2019) (recounting how the court previously “requested supplemental briefing” on standing). Defendant's papers have clouded the issue of standing by routinely relying on case law concerning Article III standing while simultaneously encouraging dismissal of Plaintiff's claims under Rule 12(b)(6), and then criticizing Plaintiff for allegedly conflating the two issues himself. See Def.'s Reply at 1 (“Plaintiff conflates

the standard necessary to satisfy Article III standing and damages needed to state a claim under Rule 12(b)(6). But the two standards are not the same."). Relatedly, neither party has made known its position on whether partial remand or dismissal is appropriate in the event that this Court ultimately finds that Plaintiff lacks standing to pursue some, but not all, of his claims in federal court. Accordingly, these issues related to standing and remand are not ripe for decision until the Court receives further briefing on them from the parties.

## V. CONCLUSION

***5** Accordingly, it is hereby:

**ORDERED**, that Defendant file a memorandum of law, not to exceed fifteen pages, addressing whether Plaintiff has standing for each claim he seeks to press in federal court, no later than October 27, 2022; and it is further

**ORDERED**, that in the same memorandum, Defendant address whether dismissal or partial remand is warranted if this Court ultimately finds that Plaintiff has standing to pursue some of his claims, but not others, in federal court; and it is further

**ORDERED**, that if Defendant does not wish to take a definitive position on Plaintiff's standing in this memorandum, then Defendant should brief the Court on whether this burden failure, alone, warrants remand under 28 U.S.C. § 1447(c); and it is further

**ORDERED**, that Plaintiff may file a response, not to exceed fifteen pages, within fourteen days of Defendant's filing of the memorandum; and it is further

**ORDERED**, that Defendant may file a reply, not to exceed seven pages, within seven days of Plaintiff's response; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2022 WL 7505177

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (7)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| 1. **Notice of Removal**<br>Trevor MILLER, individually and on behalf of all others similarly situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2021 WL 11718154 | — | N.D.N.Y. | Sep. 29, 2021 | Pleading |
| 2. **Memorandum in Support of Plaintiff's Unopposed Motion for Incentive Award, Attorneys' Fees, and Costs**<br>Trevor MILLER, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2024 WL 3518690 | — | N.D.N.Y. | May 01, 2024 | Motion |
| 3. **Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint**<br>Trevor MILLER, Individually and on Behalf of all Others Similarly Situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2022 WL 23115308 | — | N.D.N.Y. | Dec. 01, 2022 | Motion |
| 4. **Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint**<br>Trevor MILLER, individually and on behalf of all others similarly situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2022 WL 3335799 | — | N.D.N.Y. | Apr. 11, 2022 | Motion |
| 5. **Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint**<br>Trevor MILLER, individually and on behalf of all others similarly situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2022 WL 3335800 | — | N.D.N.Y. | Mar. 21, 2022 | Motion |
| 6. **Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint**<br>Trevor MILLER, individually and on behalf of all others similarly situated, Plaintiff, v. SYRACUSE UNIVERSITY, Defendant.<br>2022 WL 3335798 | — | N.D.N.Y. | Feb. 03, 2022 | Motion |
| 7. **Docket 5:21-CV-01073**<br>Miller v. Syracuse University | — | N.D.N.Y. | Sep. 29, 2021 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Miller v. Syracuse University
2022 WL 7505177 , N.D.N.Y. , Oct. 13, 2022

*Subsequent Determination*

2. Miller v. Syracuse University
662 F.Supp.3d 338 , N.D.N.Y. , Mar. 20, 2023

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 486940
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Helen JIA, Tingting Ding, Haoquan Liang, and Xiaofang Mei, on behalf of themselves and those similarly situated, Plaintiffs,
v.
WEEE! INC., Defendant.

24 Civ. 534 (PAE)
|
Signed February 13, 2025

**Attorneys and Law Firms**

Blake Joseph Lindemann, Donna R. Dishbak, Lindemann Law Firm, APC, Beverly Hills, CA, for Plaintiffs.

John Tyler Mills, Gordon Rees Scully Mansukhani LLP, New York, NY, Justin D. Knight, Gordon Rees Scully Mansukhani, LLP, San Francisco, CA, for Defendant.

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

***1** Plaintiffs Helen Jia, Tingting Ding, Haoquan Liang, and Xiaofang Mei (collectively, "plaintiffs") bring this putative class action against defendant Weee!, Inc. ("Weee"), an online grocery-delivery service, on behalf of themselves and all customers in the United States whose personally identifiable information was compromised during a February 2023 data breach of Weee. They allege that Weee's conduct violated their rights under the California constitution, several California consumer-protection statutes, *see, e.g.*, Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal Civ. Code § 1798.80 *et seq.*, and California state law.

Weee moves to dismiss the Amended Class Action Complaint, Dkt. 59 ("AC"), for lack of standing and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Although no party briefed this issue, upon the Court's review of the AC, it is apparent that the plaintiffs have not pled facts or raised claims sufficient to supply this Court with subject matter jurisdiction. Accordingly, for the reasons that follow, this Court will dismiss this action without prejudice to refiling this action, or bringing a new one, consistent with that jurisdictional requirement.

## I. Background [1]

1 The following account is drawn from the AC, Dkt. 59, and the parties' submissions on Weee's pending motions. These include Weee's memorandum of law, Dkt. 62 ("Def. Mem."); and John Mills's declaration and exhibits thereto, Dkt. 61 ("Mills Decl."), in support of Weee's motion; plaintiffs' opposition, Dkt. 63; plaintiffs' objection to Mills's declaration, Dkt. 64 ("Pls. Obj."); Weee's reply, Dkt. 65; and plaintiffs' notice of supplemental authority, Dkt. 66. Although plaintiffs object to the Court's consideration of the Mills's declaration and accompanying exhibits, *see* Pls. Obj., such material is properly before the Court on a Rule 12(b)(1) motion, *see* *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings."). The Court accordingly overrules plaintiffs' objection.

### A. Factual Background

#### 1. The Parties

Weee is a California-based online grocery delivery platform. *See* AC ¶¶ 1, 7; Def. Mem. at 3. As the "leading Asian and Hispanic e-grocer in the United States," Def. Mem. 3, Weee specializes in the delivery of locally sourced and hard-to-find food items directly to consumers. *See* AC ¶¶ 1, 7; Def. Mem. at 3.

Jia, Ding, Liang, and Mei are former customers of Weee who made several purchases on the platform after July 12, 2021. AC ¶¶ 4, 6, 14. Jia, Ding, and Mei are California citizens. *Id.* ¶¶ 4–6.

#### 2. The Data Breach

On February 6, 2023, a hacker named "IntelBroker" leaked Weee customer data on a hacking and data breach forum. *Id.* ¶¶ 1, 13. The next day, Weee issued a public notice acknowledging the breach and stating that, for customers


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

who placed orders between July 12, 2021 and July 1, 2022, "some consumer information" may have been leaked. Mills Decl., Ex. B ("Notice"); *see* AC ¶¶ 14–15. Weee's statement indicated that this consumer information included names, addresses, email address, phone numbers, order numbers, and order notes, but not payment data. AC ¶¶ 14–15; Notice.

#### 3. The Consequences

***2** Plaintiffs allege that they suffered two injuries as a result of the data breach. First, Jia and Mei claim to have experienced an increase in spam calls and text messages on their personal devices and on WeChat, the third-party online messaging platform that Weee uses to process payments. AC ¶¶ 4–6, 15. Additionally, Ding alleges that $57,000 was wrongfully taken from his bank account after the breach. *Id.* ¶ 5. Plaintiffs allege that Weee stored their payment information on its database and that it was leaked in the breach. *Id.* ¶ 15. Plaintiffs believe that Weee's third-party use of WeChat—a company with alleged ties to the Chinese Communist Party—to process payments put their personal information at further risk and contributed to the wrongful dissemination of their payment information. *Id.* ¶ 15.

### B. Procedural Background

On May 11, 2023, plaintiffs filed this case in the Northern District of California. Dkt. 1. On August 28, 2023, Weee moved to dismiss or transfer the case to this District, Dkt. 18, where a similar putative class action had been filed against Weee in connection with the same data breach. *See Liau v. Weee! Inc.*, No. 23 Civ. 1177, 2024 WL 729259 (PAE) ("*Liau*"). On January 19, 2024, Magistrate Judge Donna M. Ryu granted the motion to transfer the case to this District, based on the "first-to-file rule," "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Dkt. 38 at 3 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). In reaching that result, Judge Ryu assessed "(1) the chronology of the lawsuits, (2) the similarity of the parties involved, and (3) 'the similarity of the issues at stake.' " *Id.* (citing *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). All three factors, she found, supported transfer, because the case before her ("*Jia*") had been filed after *Liau*, involved substantially similar—but not identical—parties, and implicated substantially similar legal and factual issues. *Id.* at 4–5.

On January 25, 2024, *Jia* was transferred to this District, and assigned to this Court, based on its supervision of the related *Liau* case. Dkt. 39. On February 22, 2024, the Court in *Liau* granted Weee's motion to dismiss under Rule 12(b)(1), finding that plaintiff's alleged injury failed to establish Article III standing. *Liau v. Weee! Inc.*, No. 23 Civ. 1177 (PAE), Dkt. 23. On April 3, 2024, the Court issued an order in *Jia* seeking guidance from the parties as to next steps in the case in light of the dismissal of *Liau.* Dkt. 45. Plaintiffs requested by letter that *Jia* be transferred back to the Northern District of California; Weee opposed the request. Dkts. 46–47. On June 24, 2024, the Court issued an order denying plaintiffs' motion for transfer. Dkt. 48.

On August 12, 2024, Weee filed a motion to dismiss, a declaration, and a supporting memorandum of law. Dkts. 50–52. On August 13, 2024, the Court issued an order directing plaintiffs either to amend their complaint or oppose the motion to dismiss. Dkt. 53.

On September 11, 2024, plaintiffs filed the AC. Dkt. 59. Weee filed a motion to dismiss the AC, Dkt. 60, a supporting memorandum of law, Dkt. 62, and a declaration with annexed exhibits, Dkt. 61. On October 8, 2024, plaintiffs filed an opposition, Dkt. 63, and an objection to Weee's declaration and related exhibits, Dkt. 64. On October 14, 2025, Weee replied. Dkt. 65. On October 18, 2024, plaintiffs filed a notice of supplemental authority. Dkt. 66.

## II. Discussion

At the outset of a lawsuit, a court must assure itself of its jurisdiction. *See United Republic Ins. Co. v. Chase Manhattan Bank*, 315 F.3d 168, 170–71 (2d Cir. 2003). Federal courts are "courts of limited [subject matter] jurisdiction." *McKethan v. N.Y. State Dep't of Corr. Servs.*, No. 10 Civ. 3826 (PAE), 2012 WL 2367033, at *1 (S.D.N.Y. June 21, 2012). Under 28 U.S.C. §§ 1331 and 1332, federal courts exercise jurisdiction "only when a federal question is presented, or if asserting state-law claims under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000." *Suarez v. Marcus*, No. 20 Civ. 11051, 2021 WL 603048, at *1 (S.D.N.Y. Feb. 12, 2021) (citation omitted).

***3** "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the

parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). If at any point a federal court determines it lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Here, although the parties did not brief the issue of federal jurisdiction, the Court is obliged independently to determine whether it has such jurisdiction. For the reasons that follow, the Court concludes that it does not.

### A. Federal Question

#### 1. Applicable Legal Principles

A court has federal question jurisdiction when plaintiff's claims arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). Mere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not give rise to such jurisdiction. *See Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996) ("[W]e ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution.").

A state-law cause of action may supply federal question jurisdiction based on an embedded federal claim and supply federal question jurisdiction, but such arising-under jurisdiction exists only in "a 'special and small category' of cases." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assur.*, 547 U.S. at 699). "[F]ederal jurisdiction over a state-law claim will He if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Where all four elements are met, jurisdiction is proper. *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

#### 2. Analysis

The claims in the AC do not give rise to federal question jurisdiction. They do not arise under federal law. And they do not fit within the "special and small category" of cases where state law claims embedding federal ones can give rise to such jurisdiction. *Id.*

The AC brings 13 claims against Weee. *See* AC ¶¶ 63–157. All 13 allege violations of California constitutional, statutory, or state law. *Id.* None invoke federal law. *Id.*

The AC's 12th claim—of negligence under California law—does contain allegations of violations of Section Five of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. AC ¶ 144. Specifically, plaintiffs allege that Weee's failure to use reasonable measures to protect their data constituted "unfair ... practices in or affecting commerce," as prohibited by the FTC Act. *Id.* (quoting 15 U.S.C. § 45(a)(1)).

These allegations, however, do not satisfy the third and fourth elements of the *Grable* test, above.

As to the third element, the claim of a violation of the FTC Act does not present an issue of "importance ... to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit," as such "will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue[.]" *Id.* (emphasis in original). Rather, substantial federal issues raised by state law claims are generally found only in "exceptional cases ... that implicate broad consequences to the federal system or the nation as a whole." *Pritika v. Moore*, 91 F. Supp. 3d 553, 558 (S.D.N.Y. Mar. 16, 2015); *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014) (finding the "central role stock exchanges play in the national system of securities markets" to be sufficiently substantial). This standard is not met here. The AC's negligence claim does not call into question the validity of the FTC Act or the standards governing its application. At most, it alleges a violation of that Act as informing the theory of negligence. And "the application of a federal legal standard to [a] private litigant['s] state law claim[ ]" does not present far-reaching consequences to the federal legal system. *Pritika*, 91 F. Supp. 3d at 559; *see, e.g.*, *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 812 (1986) ("[I]t would ... flout ... congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law."); *Sirius XM Radio Inc. v. Adeptus Partners, LLC*, No. 24 Civ. 6953,

2024 WL 4827770, at *2 (S.D.N.Y. Nov. 19, 2024) (declining to find federal question jurisdiction in "quotidian contract dispute" based on the "mere presence of a federal issue in a state cause of action" (quoting *Merrell Dow*, 478 U.S. at 813)); *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 736 F. Supp. 3d 169, 183 (S.D.N.Y. June 4, 2024) (same); *Klein v. Aicher*, No. 19 Civ. 9172, 2020 WL 4194823, at *4 (S.D.N.Y. July 21, 2020) (finding "an application of HIPAA's standard to the facts alleged" insufficient to confer federal question jurisdiction).

***4** As to the fourth element, allowing a pure state-law case to remain in federal court on the basis of the AC's allusion to the FTC Act would disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The FTC Act, which prohibits "unfair ... practices in or affecting commerce," 15 U.S.C. § 45(a)(1), lacks a private right of action. *See e.g.*, *Ballentine v. Google LLC*, No. 24 Civ. 4699, 2024 WL 4855215, at *2 (S.D.N.Y. Nov. 21, 2024) ("The FTC Act ... does not provide a private right of action for an individual to sue for violations of the statute."); *In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903, 2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021) (same). Although "the absence of a federal private right of action is not dispositive of the sensitive judgments about congressional intent that § 1331 requires," *Grable*, 545 U.S. at 318 (cleaned up) (quoting *Merrell Dow*, 478 U.S. at 810), Congress's decision not to grant a private right of action is relevant to that inquiry. *Id.* And basing federal question jurisdiction on the fact that a state-law claim referenced the FTC Act would "attract[ ] a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id.*; *see also* *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, No. 11 Civ. 4141, 2012 WL 252139, at *3 (S.D.N.Y. Jan. 25, 2012) ("A federal private right of action is certainly indicative of a substantial federal issue but is not a prerequisite or bar to federal question jurisdiction.").

Accordingly, there is no claim sufficient to support federal question jurisdiction.

### B. Diversity

Diversity jurisdiction exists when a complaint "alleg[es] that the plaintiff is a citizen of a different state from each defendant and that the amount in controversy exceeds the sum or value of $75,000." *Burroughs v. Fed. Express Corp.*, No. 18 Civ. 8641 (PAE) (SN), 2020 WL 2950976, at *4 (S.D.N.Y. Jan. 7, 2020), *R&R adopted*, No. 18 Civ. 8641 (PAE), 2020 WL 1528119 (S.D.N.Y. Mar. 31, 2020). The citizenship of an individual is determined by the state in which he is domiciled, meaning "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning," *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). An individual can have multiple residences, but only one domicile. *Smith v. Harris*, No. 21 Civ. 571 (PAE), 2021 WL 4655943, at *2 (S.D.N.Y. Oct. 6, 2021). The citizenship of a corporation is determined by its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see* *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 ("[P]rincipal place of business is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." (citation omitted)).

Here, the named plaintiffs and defendant Weee are citizens of California. Specifically, Jia, Ding, and Mei are citizens of California, AC ¶¶ 4–6,[2] and Weee's principal place of business is in California, *id.* ¶ 2.[3] The AC thus does not plead diversity jurisdiction. Separately, the AC does not allege damages in excess of $75,000. *See e.g.*, AC ¶ 5 (alleging loss of $57,000). That, too, defeats diversity jurisdiction. *See, e.g.*, *PLS Fin. Servs., Inc. v. Soliman*, No. 19 Civ. 1443, 2019 WL 2420044, at *1 (S.D.N.Y. June 10, 2019) (dismissing for lack of subject matter jurisdiction where complaint failed to allege damages in excess of $75,000); *Howard v. Mun. Credit Union*, No. 5 Civ. 7488, 2008 WL 782760, at *11 (S.D.N.Y. Mar. 25, 2008) (same); *Xuejie He v. Office of N.Y.C. Comptroller*, No. 18 Civ. 7806, 2019 WL 1620691, at *2 (S.D.N.Y. Apr. 16, 2019) (similar).

2 The AC does not allege plaintiff Liang's citizenship. But because other plaintiffs are California citizens, Liang's state of domicile cannot cure the lack of diversity. *See, e.g.*, *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("The citizenship requirement for diversity jurisdiction has been interpreted to mean complete diversity so that each plaintiff's citizenship must be different from the citizenship of each defendant."); *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships."); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510–11 (S.D.N.Y. 2015).

3 The AC does not allege Weee's state of incorporation. But even if incorporated elsewhere, Weee would still be a citizen of California. *See, e.g.*, *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 76 (2d Cir. 1996) ("A corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business."); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir. 1995); *IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd.*, 534 F. Supp. 2d 446, 448 (S.D.N.Y. Feb. 20, 2008); *Zadora-Gerlof v. Axa Nordstern Art Ins. Corp.*, No. 1 Civ. 11828, 2002 WL 31324138, at *1 (S.D.N.Y. Oct. 17, 2002).

***5** Accordingly, the Court also lacks diversity jurisdiction to consider plaintiffs' claims.[4]

4 For much the same reasons, diversity jurisdiction cannot be founded on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), nor does the AC invoke it. Under CAFA, diversity jurisdiction exists for "any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006); *see also* 28 U.S.C. § 1332(d)(2), 5(b), (6). The AC does not plead facts supporting any of these elements.

## CONCLUSION

For the reasons above, this Court lacks subject matter jurisdiction, based on either federal question or diversity jurisdiction. The Court therefore *sua sponte* dismisses this case pursuant to Rule 12(b)(1). The dismissal is without prejudice to plaintiffs' right to refiling this action, or bringing a new one, consistent with jurisdictional requirements. The Court denies Weee's motions to dismiss on other grounds as moot.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2025 WL 486940

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:24-CV-00534**<br>Jia v. Weee! Inc. | — | S.D.N.Y. | Jan. 25, 2024 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

1. Jia v. Weee! Inc.
2025 WL 486940 , S.D.N.Y. , Feb. 13, 2025

**Related References (1)**

2. Jia v. WEEE! Inc.
2024 WL 3105067 , S.D.N.Y. , June 24, 2024

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.